Ronald Abramson (RA 0979)
HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3918
Telephone: (201) 536-9220
Telecopy: (201) 536-0799
*Attorneys for Plaintiff Syncsort Incorporated*

RECEIVED
JUL 2 9 2004
AT 8:30 5:44 P.M.
WILLIAM T. WALSH
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYNCSORT INCORPORATED, Plaintiff, | Civil Action No. 04-3623 (HAA) |
| vs. | |
| INNOVATIVE ROUTINES INTERNATIONAL, INC. Defendant. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff alleges as follows for its complaint against Defendant:

1. The Plaintiff is Syncsort Incorporated ("Syncsort"), a New Jersey corporation with its principal offices at 50 Tice Boulevard, Woodcliff Lake, Bergen County, New Jersey. The Defendant is Innovative Routines International, Inc. ("IRI"), a Florida corporation with its principal offices at 2194 Highway AIA, Suite 303, Melbourne, Brevard County, Florida.

2. Subject matter jurisdiction of this action is based on 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and 15 U.S.C. § 1121, in that the matter arises under the laws of the United States, including the copyright and trademark laws of the United States, and

further includes related claims for breach of licensing agreement and unfair competition, as hereinafter more fully appears. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) and the doctrines or pendent and supplemental jurisdiction. Jurisdiction of this action also exists by reason of 28 U.S.C. § 1332(a), in that the action is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Venue is properly laid in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(a).

## FACTS COMMON TO ALL COUNTS

3. Syncsort is a developer and vendor of high-performance sorting and other system and utility software for corporate data processing customers. Syncsort's sorting products are known as SyncSort®,[1] and are provided in versions for many mainframe, minicomputer and workstation operating systems. One such version of the SyncSort sorting product, configured for the UNIX® family of operating systems, is known as "SyncSort UNIX."

4. IRI is a software company that competes with Syncsort in the sorting software field. IRI markets the sorting software product CoSORT Version 8, among others.

5. Syncsort relies on patent, trademark, copyright, trade secret law and contract to protect its proprietary interests in its SyncSort brand sorting products, including without limitation SyncSort UNIX, and information concerning those products. The success of Syncsort's sorting products in the market results to a substantial degree

1. The software product name, SyncSort, has two capital "S"s; the company name, Syncsort, has a single capital "S."

from the superior performance of those products, which is due to the use of advanced sorting and operational algorithms and a high degree of optimization for the various computer platforms for which SyncSort sorting packages are offered. Except insofar as covered by issued patents, and therefore published in patent documents, Syncsort considers such algorithms, methods of operation and optimizations to constitute trade secrets. Syncsort applies protective measures to protect such trade secrets as they are embodied in the source and object codes for the products, the tangible embodiments thereof in human and machine readable form, and the related system-level as well as user documentation for such products, and benchmark figures and other test results reflecting the performance of such products (which information and materials are hereinafter collectively referred to as the "Information").

6. The Information constitutes eligible subject matter for protection under applicable trade secret law, in that it accords Syncsort a competitive advantage, and that Syncsort takes all measures necessary to ensure the confidentiality of the Information so that it may have and retain trade secret status.

7. Among the measures taken by Syncsort to ensure the confidentiality of the Information are requirements that customers or prospective customers seeking to license or evaluate a Syncsort product for possible license enter into a written agreement containing strict requirements to protect the trade secret status of the Information. Said requirements include prohibitions against unauthorized disclosure, strict limitations on who may use Syncsort's software, express prohibitions against reverse engineering, and prohibitions against using the software to develop or market a competing product.

8. Syncsort has obtained at least 15 copyrights in SyncSort UNIX, a list of which is attached hereto as Exhibit A.

9. Through means presently unknown to Syncsort, and without Syncsort's knowledge or consent, IRI came into either possession of, or the ability to access, trade secret information regarding SyncSort UNIX.

10. At the time that IRI obtained possession of or access to SyncSort UNIX trade secrets, IRI either knew or had reason to know that the Information constituted trade secrets of Syncsort and that IRI was bound by the terms of the SyncSort licensing agreement; or that IRI had acquired a copy of SyncSort UNIX by accident or mistake, or alternatively by disclosure from a person or entity whose provision thereof constituted a breach of duty owed to Syncsort.

11. On information and belief, IRI, as a result of its possession of or access to SyncSort UNIX trade secrets, has reverse engineered SyncSort UNIX in order to investigate its methods of operation, and as a result thereof has derived certain information about the internal operation of the product that is part of the Information.

12. On information and belief, during the period IRI obtained and examined Syncsort's trade secret information, IRI was developing a competing sorting product that it calls "CoSORT Version 8."

13. On information and belief, during the period after IRI obtained a copy of SyncSort UNIX, whether authorized or unauthorized, IRI was developing CoSORT Version 8.

14. On information and belief, IRI misappropriated trade secret information of Syncsort, including the software programming interface and internal information derived

from reverse engineering, and utilized this information in the process of developing CoSORT Version 8.

15. IRI has established a site on the Internet, http://www.cosort.com (the "Web Site"), to promote CoSORT Version 8. From some period of time prior to the filing of this Complaint, until on or about July 16, 2004, the Web Site contained statements that CoSORT Version 8 contained conversion utilities that could be used "to automatically replace and/or convert (respectively) SyncSort job specification files on UNIX systems and improve sort performance," and offered "SyncSort UNIX full product replacement and script conversion (free tools and services)."

16. In order for these statements to be true, the developers of CoSort Version 8 would have needed to have had access to the SyncSort software programming interface or other trade secret information. Authorized access to Syncsort's trade secrets of this nature is available outside of Syncsort itself only under a license agreement that expressly prohibits further disclosure of this information and the use of it, or any other aspect of the SyncSort software and documentation, as an aid to develop or market a competing product.

17. The use of the SyncSort software without a license agreement (including making reproductions of such software for the purpose of executing it), even if access were not prohibited by reason of Syncsort's trade secret rights, would constitute an infringement of Syncsort's copyrights.

18. In its Web Site, IRI represents that its product CoSORT Version 8 is "the fastest sort software available for UNIX environments," "the world's fastest, and most widely licensed, commercial-grade sort package for UNIX systems," "the world's first,

fastest, and most widely licensed open systems sorting package and extract-transform-load (ETL) accelerator," and "the fastest (and most scalable) sort product available for UNIX systems, period." These statements are false and deceptive.

19. SyncSort is a famous mark, which has been registered under federal law, Reg. No. 1,557,917, and by virtue of its long-standing registration is incontestable. From some period of time prior to the filing of this Complaint, until on or about July 16, 2004, IRI included the word "SyncSort" as a metatag in the html source code for the CoSORT website. Many, if not all, of the other pages on the Web Site similarly make improper use of "SyncSort" as a metatag.

20. On July 16, 2004, in response to a demand by Syncsort, IRI temporarily modified the Web Site to delete all references to Syncsort or its products, as well as the SyncSort metatags. In so doing, however, IRI denied that it was legally obligated to modify its Web Site and stated that its modification constituted merely a "gesture of good faith." Thus, Syncsort remains at risk that IRI may, at any time, re-publish its Web Site to include the wrongful references to SyncSort that have been only temporarily deleted.

## COUNT ONE (MISAPPROPRIATION OF TRADE SECRETS)

21. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

22. IRI's conduct as aforesaid constitutes misappropriation of Syncsort's trade secrets, in that, *inter alia*, IRI has (a) reverse engineered SyncSort UNIX in violation of the SyncSort licensing agreement; and (b) used SyncSort's software programming interface and internal operation information in the process of developing a competing product, CoSORT Version 8.

23. As a result of IRI's acts of misappropriation, Syncsort has been injured.

24. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

25. Syncsort has no adequate remedy at law.

## COUNT TWO (COPYRIGHT INFRINGEMENT)

26. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

27. SyncSort UNIX programs constitute copyrightable subject matter under the Copyright Act. Valid copyrights subsist therein, of which Syncsort is the owner.

28. Syncsort has duly registered said copyright, among others, as alleged in paragraph 8.

29. On information and belief, IRI executed (and as a consequence reproduced) the SyncSort software without a license agreement in connection with developing CoSORT Version 8.

30. IRI's conduct as aforesaid constitutes a violation of Syncsort's exclusive rights as a copyright owner, rendering IRI liable as an infringer.

31. IRI's acts of copyright infringement as aforesaid were willful.

32. Syncsort has been damaged by IRI's acts of copyright infringement.

33. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

34. Syncsort has no adequate remedy at law.

## COUNT THREE (BREACH OF LICENSING AGREEMENT)

35. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

36. IRI is a party to Syncsort's licensing agreement, and is bound by its terms.

37. In the alternative, as a result of IRI's awareness of Syncsort's contractual confidentiality requirements and IRI's conduct in obtaining possession or access to SyncSort UNIX, and with such knowledge retaining possession thereof and availing itself of the use thereof, IRI's acceptance of Syncsort's confidentiality terms may be fairly inferred, with the consequence that IRI is bound by Syncsort's licensing agreement to the same extent as if IRI had actually signed it.

38. IRI's conduct as aforesaid constitutes breach of said contract and/or the inducement of another to breach its contract with Syncsort.

39. Syncsort has been damaged by IRI's breach of contract.

40. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

41. Syncsort has no adequate remedy at law.

## COUNT FOUR (FALSE ADVERTISING)

42. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

43. IRI's Web Site as described above contains materials constituting a commercial advertising or promotion disseminated in interstate commerce and presenting a false or misleading description or representation of material facts likely to influence

purchasing decisions that misrepresents the nature, characteristics and qualities of IRI's products and of Syncsort's products relative to IRI's products, and wrongfully disparages Syncsort's products.

44. Said misrepresentations constitute a violation of 15 U.S.C. § 1125(a).

45. Syncsort has been damaged by said misrepresentations.

46. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

47. Syncsort has no adequate remedy at law.

**COUNT FIVE (TRADEMARK INFRINGEMENT AND DILUTION)**

48. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

49. "SyncSort" is, and at all times since before the acts of IRI complained of herein, has been, a famous and distinctive mark.

50. IRI's acts as aforesaid, including without limitation the commercial use in commerce of said marks, in the improper manner above described, will result in the likelihood of confusion with the products and services offered by Syncsort and cause dilution of the distinctive quality of said marks.

51. IRI's wrongful acts as aforesaid were committed with willful intent to trade on Syncsort's reputation and/or to cause dilution of said marks and Syncsort is entitled to monetary and other relief with respect thereto as provided in 15 U.S.C. § 1125(c).

52. As a direct and proximate result of IRI's trading on Syncsort's mark and goodwill in a fraudulent and corrupt manner as aforesaid, Syncsort has been damaged, the relevant public is likely to be, or has been confused, and IRI has been unjustly enriched.

53. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

54. Syncsort has no adequate remedy at law.

## COUNT SIX (UNFAIR COMPETITION)

55. Syncsort repeats and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

56. IRI's conduct as aforesaid constitutes common law unfair competition.

57. Syncsort has been damaged by IRI's conduct.

58. Syncsort has suffered and will continue to suffer irreparable harm as a result of IRI's activities. Unless enjoined, IRI will continue to act in the unlawful manner complained of herein, all to Syncsort's irreparable harm.

59. Syncsort has no adequate remedy at law.

## DEMAND FOR RELIEF

WHEREFORE, Syncsort requests the following relief:

a) Temporary, preliminary and permanent injunctive relief prohibiting IRI, its officers, agents, servants, employees and attorneys, and those persons in active concert and participation with them who receive actual notice of

the Court's order by personal service or otherwise, from marketing, selling, licensing or distributing CoSORT Version 8.

b) Temporary, preliminary and permanent injunctive relief prohibiting IRI, its officers, agents, servants, employees and attorneys, and those persons in active concert and participation with them who receive actual notice of the Court's order by personal service or otherwise, from utilizing, on its Web Site or otherwise, any trade secrets relating to SyncSort UNIX, or any other Information, including the SyncSort metatag.

c) Requiring IRI to deliver up for impoundment during the pendency of this action all copies of the CoSORT Version 8 computer program in its possession or control and to deliver up for destruction all infringing copies and means for making such copies.

d) Requiring IRI to return to Syncsort all copies of SyncSort UNIX in its possession, custody or control and to purge any copies or remnants thereof from IRI's systems.

e) Temporary, preliminary and permanent injunctive relief prohibiting IRI, its officers, agents, servants, employees and attorneys, and those persons in active concert and participation with them who receive actual notice of the Court's order by personal service or otherwise, from reproducing or otherwise using Syncsort's copyrighted materials.

f) Temporary, preliminary and permanent injunctive relief prohibiting IRI, its officers, agents, servants, employees and attorneys, and those persons in active concert and participation with them who receive actual notice of

the Court's order by personal service or otherwise, from using the SyncSort trademark, or any colorable imitation thereof or any mark confusingly similar thereto.

g) That IRI be required to pay to Syncsort such damages (including prejudgment interest) as Syncsort has sustained in consequence of IRI's misappropriation of Syncsort's trade secrets, infringement of said copyrights and trademark, said breach of contract, said false advertising, said unfair competition, and said tortious interference with contact and inducement to breach contract, and to account for all gains, profits and advantages derived by IRI by said trade secret misappropriation, false advertising and unfair competition; and all gains, profits and advantages derived by IRI by its infringement of said copyright or such damages as to the Court shall appear proper within the provisions of the copyright statutes, but not less than the amounts provided for in 17 U.S.C. § 504(c).

h) That IRI be required to pay punitive damages to plaintiff.

i) That IRI pay to Syncsort the costs of this action and reasonable attorneys' fees to be allowed to Syncsort by the Court.

j) That Syncsort have such other and further relief as is just.

Dated: July 29, 2004

HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
Attorneys for Plaintiff Syncsort Incorporated

By: ______________________
Ronald Abramson

Of Counsel:

Jeff H. Galloway
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6000

**JURY DEMAND**

The plaintiff, Syncsort Incorporated, hereby demands a trial by jury on all issues so triable.

HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
Attorneys for Plaintiff Syncsort Incorporated

By: ______________________
Ronald Abramson

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I certify that I am not aware of the matter in controversy being the subject of any other court, arbitration, or administrative proceeding pending in any court or arbitration forum. I certify that no such action or arbitration proceeding is presently contemplated.

HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
Attorneys for Plaintiff Syncsort Incorporated

By: ______________________
Ronald Abramson

## CERTIFICATION PURSUANT TO LOCAL RULE 201.1

I certify that the damages recoverable in this action exceed $150,000 exclusive of interest and cost and any claim for punitive damages.

HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
Attorneys for Plaintiff Syncsort Incorporated

By: ______________________
Ronald Abramson

RECYCLED

# EXHIBIT A

Registration Number: TXu-1-080-553
Title: Syncsort MVS : release 2.5.
Registered: 29Jan03

Registration Number: TXu-1-080-554
Title: Syncsort MVS : release 3.0.
Registered: 29Jan03

Registration Number: TXu-1-080-555
Title: Syncsort MVS : release 3.2.
Registered: 29Jan03

Registration Number: TXu-1-080-558
Title: Syncsort MVS : release 3.7.
Registered: 29Jan03

Registration Number: TXu-1-080-557
Title: Syncsort UNIX : release 1.
Registered: 29Jan03

Registration Number: TXu-844-002
Title: Syncsort UNIX version 1.6.
Registered: 20Feb98

Registration Number: TXu-870-440
Title: SyncSort UNIX version 1.6.
Registered: 22Jan99

Registration Number: TXu-870-441
Title: Syncsort UNIX version 1.6.
Supplement to Registration: TXu 844-002, 1998
Registered: 12Feb99

Registration Number: TXu-1-173-101
Title: Syncsort UNIX Release 2.
Registered: 29Jan03

Registration Number: TXu-1-080-551
Title: Visual Syncsort & Syncsort for Windows : release 2.
Registered: 29Jan03

Registration Number: TXu-1-080-562
Title: Visual Syncsort & Syncsort for Windows : release 2.
Registered: 29Jan03

Registration Number: TXu-1-080-552
Title: Visual Syncsort & Syncsort for Windows : release 3.
Registered: 29Jan03

Registration Number: TXu-1-080-548
Title: Visual Syncsort for Windows : release 3.
Registered: 29Jan03

Registration Number: TXu-1-173-100
Title: Syncsort VMS Release 1.
Registered: 29Jan03

Registration Number: TXu-1-080-561
Title: Syncsort Z/OS : release 1.1.
Registered: 27Jan03

**ADDITIONAL REGISTRATIONS APPLIED FOR AND PENDING**