Ronald Abramson (RA 0979)
HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
101 HUDSON STREET, SUITE 3601
JERSEY CITY, NEW JERSEY 07302-3918
Telephone: (201) 536-9220
Telecopy: (201) 536-0799

Jeff H. Galloway (JG 0496)
Leslie M. Ballantyne (LB 1360)
HUGHES HUBBARD & REED LLP
A New York Limited Liability Partnership
One Battery Park Plaza
NEW YORK, NEW YORK 10004
Telephone: (212) 837-6000
Telecopy: (212) 422-4726

*Attorneys for Plaintiff Syncsort Incorporated*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYNCSORT INCORPORATED, | ) |
| | ) |
| | ) Document Electronically Filed |
| Plaintiff, | ) |
| | ) 04-CV-3623 (WHW) |
| vs. | ) |
| | ) |
| INNOVATIVE ROUTINES | ) |
| INTERNATIONAL, INC. | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS COUNTS
I, IV, V AND VI OF DEFENDANT'S
COUNTERCLAIM**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................1

    Background ................................................................................................................1

        The Parties ...........................................................................................................1

        The Pleadings.......................................................................................................2

ARGUMENT...............................................................................................................3

    I.       THE ANTITRUST COUNT SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED ...................................................................................3

        A.     The Allegations of a UNIX Sort Software Market Are
Deficient.......................................................................................6

        B.     The Allegations of Anti-Competitive Conduct Do Not
Support Antitrust Recovery ........................................................10

            (1)    The Predatory Pricing and Licensing Term
Allegations Describe Nothing More than Normal
Business Competition .....................................................10

            (2)    The Allegation Regarding Sham Litigation Is
Barred by the Noerr-Pennington Doctrine......................13

            (3)    The Leveraging Allegations Are Deficient......................16

        C.     IRI Fails to Plead Antitrust Injury ..............................................19

    II.      COUNTS IV AND V SHOULD BE DISMISSED FOR FAILURE
TO STATE A CLAIM .......................................................................20

        A.     IRI Has Failed to Plead the Necessary Elements for
Tortious Interference with Prospective Economic
Advantage ...................................................................................20

            (1)    The Alleged Conduct Constitutes Privileged
Competitive Activity.......................................................21

NY NY 883865_1.DOC

## TABLE OF CONTENTS
### (continued)

(2)    IRI Fails to Specify Any Customers or Contracts Allegedly Subject to Interference ...................................................22

B.    IRI Has Failed to Plead the Necessary Elements for Tortious Interference with Contract...........................................................23

III.    IRI'S COUNT VI ALLEGING UNFAIR COMPETITION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.........................................................................................................................25

CONCLUSION.........................................................................................................................26

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Advo, Inc.  v. Phila. Newspapers, Inc.*, 51 F.3d 1191 (3d Cir.1995) .........................................4, 10

*Alberta Gas Chems. Ltd. v. E.I. DuPont De Nemours & Co.*, 826 F.2d 1235......................................................................................................................12

*American Health Sys., Inc. v. Visiting Nurse Assoc.*, No. Civ. A. 93-542, 1994 WL 314313 (E.D. Pa. June 29, 1994) ................................................................19

*Aspen Skiing Co. v. Aspen Highland Skiing Corp.*, 472 U.S. 585 (1985) ......................................12

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)..................................................................................4

*Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT*, No. Civ. A. 96-369, 1997 WL 576402 (D.N.J. Sept. 12, 1997) ..................................................20, 23, 24

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162 (S.D.N.Y. 1995) .........................................................................................................6

*Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98 (3d Cir. 1992)..........................................................4

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494 (3d Cir. 1998) ....................................................................................................................12

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993).............................................................................................................10

*Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.*, No. Civ. A. 03-232, 2003 WL 22797730 (E.D. Pa. Nov. 18, 2003) ............................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ................................12, 19, 24

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48 (2d Cir. 1979)................................................................................................11

*CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813 (D. Del. 1997) ...................................................5

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co.*, 912 F. Supp. 747 (D.N.J. 1995)...........................................................................................25

*Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir.1988)..................................................................................................4

iii

## TABLE OF AUTHORITIES
### (continued)

*DeJoy v. Comcast Cable Communications, Inc.*, 941 F. Supp. 468 (D.N.J. 1996) ....................................................................................................................3

*Dentsply International, Inc. v. New Technology Co.*, Civ. A. No. 96-272, 1996 WL 756766 (D. Del. Dec. 19, 1996).........................................................13, 14

*Dial-a-Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584 (D.D.C. 1995)..............................19

*E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*, 704 A.2d 1364 (N.J. 1996) .......................................................................................21, 22, 24, 25

*Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127 (1961).................................................................................................13

*Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556 (4th Cir. 1990)...................................................................................................14

*Elecs. Communications Corp. v. Toshiba Am. Cons. Prods., Inc.*, 129 F.3d 240 (2d Cir. 1997)...........................................................................................4

*Eli Lilly & Co. v. Roussel & Co.*, 23 F. Supp. 2d 460 (D.N.J. 1998) ............................25

*FilmTec Corp. v. Hydronautics*, 67 F.3d 931 (Fed. Cir. 1995) .....................................14

*Fineman v. Armstrong World Indus.*, 980 F.2d 171 (3d Cir. 1992)............................16, 18, 20, 21

*Garshman v. Universal Resources Holding, Inc.*, 641 F. Supp. 1359 .............................4

*Hudson's Bay Co. Fur Sales Inc. v. Am. Legend Coop.*, 651 F. Supp. 819 (D.N.J. 1986)...............................................................................................12

*Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737 (3d Cir. 1996) .......................4

*Interfaith Cmty. Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339 (D.N.J. 1996) ....................................................................................................................3

*Louis Kamm, Inc. v. Flink*, 113 N.J.L. 582, 175 A. 62 (E. & A. 1934)..........................21

*Lucas v. Kendiesel, Inc.*, Civ. A. No. 93-4480, 1995 WL 350050, at *9 (D.N.J. June 9, 1995) ........................................................................................23

*Monarch Entm't Bureau, Inc. v. N.J. Highway Auth.*, 715 F. Supp. 1290 (D.N.J. 1989).................................................................................................14

*Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997).................................3

*Organon, Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453 (D.N.J. 2003)..................16

## TABLE OF AUTHORITIES
### (continued)

*Outboard Marine Corp. v. Pezetel*, 474 F. Supp. 168 (D. Del. 1979) ............................................10

*Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31 (N.J. 1989) ...................................20

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
     508 U.S. 49 (1993) .........................................................................................................13, 14, 15

*Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002).........................................14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir.
     1997) .............................................................................................................................4, 6, 10, 12

*Re-Alco Indus. Inc. v. Nat'l Ctr. for Health Educ. Inc.*, 812 F. Supp. 387
     (S.D.N.Y. 1993) ..................................................................................................................6

*Rolite Inc. v. Wheelabrator Envtl. Sys. Inc.*, 958 F. Supp. 992 (E.D. Pa.
     1997) ..................................................................................................................................18

*Schuylkill Energy Resources, Inc. v. Pa. Power & Light Co.*, 113 F.3d 405
     (3d Cir. 1997)......................................................................................................................4

*SK&F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055 (3d Cir. 1980) ......................................25

*SNA, Inc. v. Array*, 51 F. Supp. 2d 554 (E.D. Pa. 1999).................................................................14

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) .........................................................4, 12

*Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518 (5th Cir. 1999)......................................11

*Storis, Inc. v. GERS Retail Sys., Inc.*, Civ. A. No. 94-4400, 1995 WL
     337100 (D.N.J. May 31, 1995) ....................................................................................23, 24

*Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648 (7th Cir.1984) ...........................................................5

*Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318 (D.N.J.
     1999) ...............................................................................4, 5, 6, 7, 10, 12, 14, 15, 16, 17

*United States Mineworkers of Am. v. Pennington*, 381 U.S. 657 (1965)......................................13

*United States v. E.I. duPont De Nemours & Co.*, 351 U.S. 377 (1956) ........................................16

*Wilson v. Mr. Tee's*, 855 F. Supp. 679 (D.N.J. 1994) ..................................................................25

## TABLE OF AUTHORITIES
### (continued)

### STATUTE AND RULES

New Jersey Antitrust Act, N.J. Stat. Ann. § 56:9-3 (West 2004) ...................................................25

Sherman Act, 15 U.S.C. § 1 ..............................................................................................................25

Sherman Act, 15 U.S.C. § 2 ..............................................................................................2, 3, 6, 21

Fed. R. Civ. P. 8(a) .......................................................................................................4, 18, 20

Fed. R. Civ. P. 12(b) ..................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................3

Fed. R. Civ. P. 56 .......................................................................................................................3

### MISCELLANEOUS

RESTATEMENT (SECOND) OF TORTS § 768 (1979) .........................................................................22

Plaintiff and Counterclaim Defendant Syncsort Incorporated ("Syncsort") submits this Memorandum of Law in support of its Motion, pursuant to Federal Rule of Civil Procedure 12(b), to Dismiss Counts I, IV, V and VI of the Counterclaim of Defendant and Counterclaim Plaintiff Innovative Routines International, Inc. ("IRI").

## Preliminary Statement

In an attempt to defend against Syncsort's allegations that IRI has misappropriated Syncsort's trade secrets, violated Syncsort's copyrights, engaged in false advertising and other wrongful conduct, IRI has asserted a tactical makeweight Counterclaim, without substance or merit. This Counterclaim is nothing more than an attempt to divert the Court's attention from IRI's own wrongdoing. Syncsort now moves to dismiss Counts I, IV, V and VI of the Counterclaim for failure to state a claim upon which relief can be granted.

Even assuming the truth of every non-conclusory allegation in these counts, IRI's claims essentially boil down to the assertion that Syncsort has engaged in competition in the normal course of business. In truth, the conduct that IRI complains about – Syncsort's sale and licensing of its software – encompasses activities that are encouraged by intellectual property law and the antitrust laws.

## STATEMENT OF FACTS

### Background

#### The Parties

Plaintiff Syncsort is a developer and vendor of high performance sorting and other system and utility software for corporate data processing customers. (Compl. ¶ 3.) Among other products, Syncsort licenses "SyncSort UNIX," a software product configured for the UNIX®

Operating System. (*Id.*)[1] Defendant IRI markets, among other products, CoSORT Version 8, a software product that competes with SyncSort UNIX. (*Id.* ¶ 4.).

**The Pleadings**

Syncsort's Complaint asserts claims against IRI for misappropriation of trade secrets, copyright infringement, breach of licensing agreement, false advertising, trademark infringement and dilution, and unfair competition. Syncsort seeks both damages and injunctive relief.

IRI served its Answer, Affirmative Defenses, and Counterclaim on August 26, 2004. While denying many of the substantive allegations of the Complaint, IRI admitted certain key elements of the Complaint, including that "at some times prior to July 16, 2004, certain metatags on the IRI Internet web site included the word 'SyncSort,'" (Answer ¶ 19), and that its web site represents that CoSORT Version 8 is "the fastest sort software available for UNIX environments," "the world's fastest, and most widely licensed, commercial-grade sort package for UNIX systems," "the world's first, fastest, and most widely licensed open systems sorting package and extract-transform-load (ETL) accelerator," and "the fastest (and most scalable) sort product available for UNIX systems, period." (Compl. ¶ 18; Answer ¶ 18.) Finally, IRI admitted that its "Internet web site advertises certain products and services, and that it does so in interstate commerce. . . ." (Answer ¶ 43.)

IRI also asserted six counts in its Counterclaim against Syncsort, four of which are the subject of this motion. Count I purportedly asserts a claim for attempted monopolization, in violation of section 2 of the Sherman Act. Counts IV and V assert claims for tortious

---

1.  Plaintiff spells its name with a single capital "s" -- Syncsort. The name of its software is spelled with two capital "s"s -- SyncSort.

interference, with prospective economic advantage (Count IV) and with contract (Count V). Count VI purports to state a common-law unfair competition claim.

## ARGUMENT

A motion to dismiss under Rule 12(b)(6) will be granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the Counterclaim. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *DeJoy v. Comcast Cable Communications, Inc.*, 941 F. Supp. 468, 473 (D.N.J. 1996).

Rule 12(b)(6) requires the Court to accept the non-conclusory allegations of the Counterclaim as true, and draw all reasonable inferences in favor of IRI. "Nonetheless, legal conclusions made in the guise of factual allegations are not given a presumption of truthfulness." *DeJoy*, 941 F. Supp. at 472. And the court need not credit "'bald assertions' or 'legal conclusions.'" *Morse*, 132 F.3d at 906 (citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court is not limited to the pleadings themselves, but may consider documents attached to the pleadings, documents on which the pleadings are based, and public records, of which the court may take judicial notice. *See Interfaith Cmty. Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339, 1345 (D.N.J. 1996). Together with this memorandum, Syncsort is submitting the extrinsic material it relies on, including the Counterclaim, and the documents attached thereto (attached as Exhibit 1). Consideration of these materials does not require the conversion of the motion into one for summary judgment under Rule 56. *Id.*

## I.   THE ANTITRUST COUNT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

IRI purports to state a claim under Section 2 of the Sherman Act for attempted monopolization. (Counterclaim ¶¶ 3-11.) To state a claim for attempted monopolization, IRI

3

must plead facts sufficient to show that Syncsort:  "(1) engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and with (3) a dangerous probability of achieving monopoly power." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 442 (3d Cir. 1997) (*quoting Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)); *Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318. 328 (D.N.J. 1999); *see also Schuylkill Energy Resources, Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 413 (3d Cir. 1997); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 750 (3d Cir. 1996); *Advo, Inc. v. Phila. Newspapers, Inc.*, 51 F.3d 1191, 1197 (3d Cir. 1995); *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992).

Moreover, in asserting an antitrust claim, it is not sufficient under Rule 8(a) for IRI simply to allege the elements in conclusory fashion.  An antitrust plaintiff must plead facts that permit the Court to infer that an antitrust claim is cognizable.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 n. 17 (1983) ("*Associated General*") (in an antitrust case "a district court must retain the power to insist upon some specificity in the pleading before allowing a potentially massive factual controversy to proceed"); *Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 180 (3d Cir. 1988) ("'It is not ... proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.'") (*quoting Associated General*, 459 U.S. at 526); *see also Elecs. Communications Corp. v. Toshiba Am. Cons. Prods., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997); *Garshman v. Universal Resources Holding, Inc.*, 641 F.Supp. 1359, 1367 (D.N.J.) ("'The heavy costs of modern federal litigation, especially antitrust litigation, and the mounting caseload pressure on the federal courts,' militate in favor of requiring some reasonable particularity in pleading

violations of the federal antitrust laws.") (*quoting Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984)).

IRI "cannot simply cry 'antitrust' or 'Sherman Act' in a crowded courtroom and occupy its opponents and the Court with head-scratching attempts to peer through the smoke." *CCPI Inc. v. Am. Premier, Inc.*, 967 F. Supp. 813, 816 (D. Del. 1997).  An antitrust litigant "must adumbrate in each counterclaim an intelligible definition of the elements of its antitrust claim, even under the liberal pleading requirements of the Federal Rules of Civil Procedure." *Id.* at 819

In conclusory fashion, IRI alleges that Syncsort is attempting to monopolize something IRI calls the worldwide market for "sort software for the UNIX operating system" through the following "predatory and anticompetitive practices":  (1) selling SyncSort UNIX below cost, (2) inducing IRI customers to provide it with IRI's pricing and quotation information, (3) offering free copies of Syncsort software and paying off customer debt to IRI, (4) leveraging "in at least two circumstances . . . and likely significantly more" an alleged "virtual monopoly" in something called "the mainframe sort market," and (5) filing this lawsuit.  (Counterclaim ¶¶ 5-9.)

Remarkably, IRI's allegations are, in substance, nearly identical to those contained in a counterclaim asserted against Syncsort in a previous case in this Court, and dismissed on the pleadings.  *Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318 (D.N.J. 1999) (hereinafter "*Syncsort I*").  Just as in *Syncsort I*, the Section 2 counterclaim is again being interposed by a competitor attempting to defend against a lawsuit brought by Syncsort for trade secret misappropriation.  The main difference is that, whereas Sequential Software, Inc. ("Sequential") cast itself as a struggling new entrant to the market, IRI describes itself as "the open systems sort market pioneer and leader" (Counterclaim Tab C at p.1) and describes its

5

CoSORT product as the "most widely licensed, commercial sort grade package for UNIX systems." Complaint ¶18; Answer ¶ 18.

Presumably because IRI could hardly allege that Syncsort is a monopolist in a market where IRI is supposedly the market leader with the "most widely licensed" product, IRI alleges instead that Syncsort is *attempting* to monopolize this market, even though it is currently dominated (according to IRI) by IRI.

### A.      The Allegations of a UNIX Sort Software Market Are Deficient

As this Court noted in *Syncsort I*: "[v]iability of claims of monopolization and attempted monopolization under Section Two of the Sherman Act are dependent upon demonstration by a plaintiff why a proposed market is the relevant market." *Syncsort I*, 50 F. Supp. 2d at 330. The Third Circuit has held that:

> The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it. . . . Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (emphasis added, internal quotes omitted), *quoted in Syncsort I*, 50 F. Supp. 2d at 331; *see also B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162 (S.D.N.Y. 1995) (dismissal where plaintiffs failed to explain rationale underlying narrow proposed market); *Re-Alco Indus. Inc. v. Nat'l Ctr. for Health Educ. Inc.*, 812 F. Supp. 387 (S.D.N.Y. 1993) (dismissal where plaintiff failed to allege that specific health education product was unique or explain why product was not part of the larger market for health education materials).

Here, IRI alleges a worldwide geographic market (Counterclaim ¶ 8(b)).  Its product market allegation, in its entirety reads:

> The relevant product market is sort software for the UNIX operating system.  While there are sort programs available for other operating systems, they are not interchangeable with sort programs for the UNIX operating system.  This is because consumer databases and related applications cannot be readily moved to non-UNIX platforms simply to leverage another sort product.

(Counterclaim ¶ 8(a).)

In *Syncsort I*, this Court held that "failure to plead a relevant product market is, standing alone, a sufficient basis for dismissal of an antitrust claim."  50 F. Supp. 2d at 331.  Adequacy of relevant product market pleading is determined by reference to factors such as "price, use and qualities" that comprise considerations of interchangeability; "[a] market definition must look to all relevant sources of supply, either actual rivals or eager potential entrants to the market."  *Id.* & n. 11 (citations omitted).  IRI's market definition says nothing about what the software products at issue do (nor is such a description found anywhere else in the text of the Counterclaim), fails to describe the nature of the market in which these products compete, and makes no mention of price, use or qualities that would enable the Court to assess interchangeability in the relevant market.  Similarly, IRI fails to address how there could be any barriers preventing new entrants to the market.  As such, Count I utterly fails to plead the relevant product market.  *Id.*; *see Brotech Corp. v. White Eagle Int'l Techs. Group, Inc.*, No. Civ. A. 03-232, 2003 WL 22797730, at *5 (E.D. Pa. Nov. 18, 2003) (finding insufficient pleading of the relevant market where the counterclaim failed to "encompass any interchangeable substitute products and [did] not allege that there [were] no substitute products.").

7

To the extent that the Counterclaim mentions or alludes to the requisite factors of "interchangeability" and "cross-elasticity of demand," it does so in a purely conclusory manner, in an attempt to exclude "sorting software" for other operating systems from the relevant market. (Counterclaim ¶ 8(b).)  Moreover, even the conclusory allegations are contradictory.  Thus, while IRI alleges an apparently broad market, including all "sorting software" available for the UNIX operating systems – a market that would include every one of the millions of computers that run on the UNIX operating systems – in other places, IRI alleges that there are "fewer than a half dozen companies" in this market (not naming any of them) (*id.* ¶ 7(a)), of which, apparently, only two – IRI and Syncsort – count for anything.  (*Id.* ¶ 7(b)-(e).)

When documents referenced in and relied upon in the Counterclaim are taken into account, however, a different picture emerges.  For example, IRI's web site (excerpt attached to Syncsort's July 13, 2004 letter, which is referenced in Counterclaim ¶ 5(e)(iii)(D) and attached without exhibits as Counterclaim Tab A)[2] states that CoSORT is a "drop-in replacement" for a dozen other products, to wit, the sorting software included in:  Amdocs Ensemble; Ascential DataStage 3.6-7; Cincom Supra SQL, 2.8; CP LiveContent BATCH; IBM DB2 Loader, 5-7; Informatica PowerCenter 6; MF COBOL 4, 4.1; SAG Natural 2.2, 3.1, 4.2; SAS System 7 & 8; Sun MRP MBM & MTP; SyncSort UNIX 2 & 3; and UNIX /bin SVR4.  *See* Exhibit 2 at Tab C, p.1.  The Counterclaim contains absolutely no discussion of why SyncSort should be considered a standout among these dozen as the only product that should be considered in the stated relevant market other than CoSORT.

---

2.  Syncsort's July 13, 2004 letter included seven exhibits, which IRI has neglected to include with the letter it attaches as Tab A to its Answer and Counterclaim.  Syncsort is attaching to this motion a full copy of the letter with tabs A-G, as Exhibit 2.

Moreover, this same web site describes CoSORT as the "most widely licensed, commercial-grade sort package for UNIX systems." *See* Exhibit 2 at Tab D, p. 1; *see also* Complaint ¶ 18; Answer ¶ 18. IRI's "Response Letter" (referenced in Counterclaim ¶ 5(e)(iii)(B) & (D), and attached to the Counterclaim as Tab C) goes even further, stating that IRI considers itself to be the "open systems sort market . . . leader."

Finally, the phrase "open systems sort market", which is echoed by repeated references in IRI's web site to CoSORT being a "sort product" for "open systems," *see* Exhibit 2, reflects IRI's own assessment that it competes in a market that is not limited to UNIX systems, but instead in a market comprised of all other "open systems", including, according to IRI, computers running the following operating systems:  CP/M, DOS, and "Wintel" (i.e., Windows), as well as UNIX.  Exhibit 2 at Tab D, p. 1.

In sum, taking IRI's own statements as true, IRI is currently the "market leader," having the "most widely licensed" product (CoSORT) in a market that includes at least a dozen other competitors, and spans three operating systems beyond UNIX.  According to IRI's statements contained in or referenced in its Counterclaim, IRI has been the pioneer and/or leader in this market since 1978.  Counterclaim Tab C.  Yet, according to Count I, there is now "a dangerous probability" (Counterclaim ¶ 7) that Syncsort – which introduced its product, SyncSort UNIX eleven years ago in 1993 (*id.* ¶ 24) – will achieve monopoly power in the relevant market.  (*Id.* ¶ 7.)

The Counterclaim makes no attempt to explain the apparent contradiction between the market IRI describes in its promotional materials and the market IRI proffers as the basis of its Section 2 claim.  Given this contradictory picture of the relevant market and IRI's and Syncsort's

9

alleged places in it, IRI's Section 2 claim cannot stand.  *See Queen City Pizza*, 124 F.3d at 436;

*Syncsort I*, 50 F. Supp. 2d at 330-31.

### B.   The Allegations of Anti-Competitive Conduct Do Not Support Antitrust Recovery

Even if IRI could properly allege a relevant market, its Section 2 claim would still be

deficient, because the Counterclaim's allegations of anticompetitive conduct fall woefully short

of the requisite pleading standards, let alone the heightened pleading standards that apply to the

allegation of anticompetitive litigation.  *See Outboard Marine Corp. v. Pezetel*, 474 F. Supp.

168, 172 (D. Del. 1979).

### (1)   The Predatory Pricing and Licensing Term Allegations Describe Nothing More than Normal Business Competition

IRI asserts, without providing any specific figures, that Syncsort sold its product below

cost so as to undercut its competition.  (Counterclaim ¶ 5(a)-(c).)  The law is clear that prices

above marginal cost cannot be predatory.  *Advo, Inc. v. Phila. Newspapers, Inc.*, 51 F.3d 1191,

1198 (3d Cir. 1995) ("[T]he most important measure is marginal cost . . . . As long as a firm's

prices exceed its marginal cost, . . . [s]uch pricing is presumably not predatory."); *see Brooke

Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993) ("only below-cost

prices should suffice, and we have rejected elsewhere the notion that above-cost prices that are

below general market levels or the costs of a firm's competitors inflict injury to competition

cognizable under the antitrust laws.").

In the software market, marginal cost is nearly zero, consisting simply of the cost of

reproducing another CD containing the software, packaging the same and shipping it to the

customer – these cannot total more than a few dollars per copy.  The only specific allegation IRI

makes in this regard is that, "on at least one occasion, in order to eliminate IRI as a competitor

10

with respect to a particular customer that had made a tentative agreement with IRI, Syncsort offered to provide to the customer a free copy of Syncsort's product and to pay off any debt the customer might have had to IRI with respect to the customer's tentative agreement with IRI." (Counterclaim ¶ 5(c).)

This conduct hardly rises to the level of predatory pricing sufficient to sustain an antitrust counterclaim. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 533 n.15 (5th Cir. 1999) (fact that one part of a construction project would run at a negative operating margin, in absence of allegation that entire project was unprofitable, would not sustain a claim of predatory pricing); *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 55 (2d Cir. 1979) (lower court erred in holding that distribution of free weekend newspapers for a five-week period constituted a predatory practice; appellate court noted that "[i]n an attempt to monopolize case, courts should exhibit restraint in imposing on the market their own notion of what constitutes improper competitive behavior.").

IRI further claims that Syncsort "enticed" its customers to enter multi-year licensing agreements that would prevent them from switching to a competitor's product. (*Id.*, ¶ 5(b).) IRI, which licenses its product on a perpetual, rather than term, basis (*id.*, ¶ 5(e)(ii)(K)) does not explain how a licensee is any more prevented from switching to another product under a term license than that customer would be under a perpetual license. If anything, common sense would suggest that a customer who has licensed a product "forever" might be less inclined to switch products than one who had only licensed a product for a fixed term. In any event, IRI undercuts its own contention in this regard when it describes the "window of opportunity" that it says customers have, at the expiration of their Syncsort licenses, to engage in an arrangement with another provider. (*Id.*)

11

Syncsort's alleged behavior constitutes nothing more than basic business competition; the company tries to offer the best prices to potential customers, and attempts to induce them to sign licensing agreements for its products.  Nothing prevents the customer from switching to another product, either during the term of the license or at its conclusion.  As this Court has noted, "courts have been careful to avoid constructions of § 2 [of the Sherman Act] which might chill competition, rather than foster it. . . . [t]o establish the requisite intent under Section Two [of the Sherman Act], an antitrust plaintiff must plead, much more prove, 'something more than an intent to compete vigorously.'"  *Syncsort I*, 50 F. Supp. 2d at 333 (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456-68 (1984)); *see also Aspen Skiing Co. v. Aspen Highland Skiing Corp.*, 472 US 585, 605 (1985) (intentional monopolization must comprise exclusion of "rivals on some basis other than efficiency") (citations omitted).

The antitrust laws were designed for the "protection of competition, not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977); *Syncsort I*, 50 F. Supp. 2d at 329; *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 518 (3d Cir. 1998) (*quoting Queen City Pizza*, 124 F.3d at 441) ("'The purpose of the Sherman Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market'"); *Alberta Gas Chems. Ltd. v. E.I. DuPont De Nemours & Co.*, 826 F.2d 1235, 1239 (3d Cir. 1987) ("Conduct that harms competitors may benefit consumers--a result the antitrust laws were not intended to penalize."); *Hudson's Bay Co. Fur Sales Inc. v. Am. Legend Coop.*, 651 F. Supp. 819, 834 (D.N.J. 1986) ("[C]ourts ... will not permit [the Sherman Act's] salutary purpose to be invoked by business concerns seeking protection from the 'rigors of competition.'") (citations omitted).

12

IRI has pled nothing more than the activities of a participant in a competitive business market. Accordingly, the allegations of anticompetitive activity cannot be sustained.

**(2)      The Allegation Regarding Sham Litigation Is Barred by the Noerr-Pennington Doctrine**

The prosecution of lawsuit is immunized from antitrust liability by the *Noerr-Pennington* doctrine[3] so long as it is not a sham. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("PRE"). Other than its conclusory words, there is nothing in IRI's pleading to suggest that this is sham litigation.

In *PRE*, the Court announced a two-part test for determining that a lawsuit is a "sham":

> First the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham litigation must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of a competitor,' through the 'use [of] the governmental *process* -- as opposed to the *outcome* of that process -- as an anticompetitive weapon.

*PRE*, 508 U.S. at 60-61 (citations omitted, emphasis in original). Moreover, "[t]he existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." *Id.* at 62. A litigation will not be considered a sham "so long as at least one claim in the lawsuit has objective merit." *Dentsply International, Inc. v. New Technology Co.*, Civ. A. No. 96-272, 1996 WL 756766, at * 2 (D. Del. Dec. 19, 1996); *see PRE*,

_____

3.   *Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127 (1961) ("*Noerr*"); *United States Mineworkers of America v. Pennington*, 381 U.S. 657 (1965) ("*Pennington*").

508 U.S. at 60 (specifying "*lawsuit* must be objectively baseless") (emphasis added); *Eden Hannon & Co. v. Sumitomo Trust & Banking Co.*, 914 F.2d 556, 565 (4th Cir. 1990) (holding since plaintiff succeeded on one of four claims, suit was "hardly a sham.").  Therefore, IRI must show that each of Syncsort's counts in its Complaint is a sham.

IRI's Counterclaim falls far short of this standard, and dismissal is, therefore, appropriate.  *See FilmTec Corp. v. Hydronautics*, 67 F.3d 931 (Fed. Cir. 1995) (granting motion to dismiss antitrust claim); *Monarch Entm't Bureau, Inc. v. N.J. Highway Auth.*, 715 F. Supp. 1290 (D.N.J. 1989) (same).  As an initial matter, IRI does not even attempt to argue that Syncsort's false advertising count (Complaint ¶¶ 42-47) or Syncsort's unfair competition count (Complaint ¶¶ 55-59) constitute a sham.  Indeed, IRI admits in its Answer that Syncsort has made the statements that form the basis of the False Advertising count.  (Answer ¶ 43.)  Moreover, although IRI complains about Syncsort's trademark count (Complaint ¶¶ 48-54), it would be hard-pressed to label this count a sham, considering that IRI has admitted the use of the word "Syncsort" as a metatag on its web site, and case law shows that this conduct constitutes violation of the Lanham Act.  *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002); *SNA, Inc. v. Array*, 51 F. Supp. 2d 554, 561-63 (E.D. Pa. 1999).  Thus, even without further examination of IRI's critique of Syncsort's other counts, this litigation clearly is not a sham.  *Dentsply,* 1996 WL 756766 at *2.

A simple examination of Syncsort's remaining counts reveals that these are well grounded and not "objectively baseless."  Syncsort harbors more than "a reasonable belief that there is a chance that [its] claim[s] may be held valid upon adjudication," *PRE*, 508 U.S. at 62-63, not least because it has pursued prior misappropriation claims before this very Court.  *See Syncsort I, supra.*  As the Supreme Court held in *PRE*, "[t]he existence of probable cause to

14

institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation." 508 U.S. at 61.  The Court may take judicial notice of the fact that IRI did not move to dismiss or otherwise challenge the sufficiency of the Complaint.  Further, there is certainly no basis to conclude from the facts alleged by IRI that this lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor," through the "use [of] the governmental *process* -- as opposed to the *outcome* of that process -- as an anticompetitive weapon. *PRE*, 508 U.S. at 61 (emphasis in original).

Indeed, IRI's response to Syncsort's cease-and-desist letter, *see* Counterclaim Tab C, demonstrates the ample grounds upon which Syncsort may justify its action.  In its letter, IRI admits that it developed its conversion products from information taken from "SyncSort UNIX job scripts that customers have shared with IRI," and admits that Syncsort's customers are the "most viable, meaningful, and willing source of assistance." *Id.* at pp. 2-3.  These admissions provide ample justification for Syncsort's claims; IRI's possession of Syncsort job scripts forms the heart of Syncsort's trade secret misappropriation claim.  Regardless of the dispute between the parties as to the proper trade secret classification of the job scripts, or as to who should prevail on Syncsort's claims, there is nothing to indicate that the claims were brought without any legal basis or in bad faith.

IRI takes Syncsort to task for continuing the lawsuit after IRI made certain denials in response to Syncsort's cease-and-desist letter, as if any lawsuit continued after the defendant has denied certain allegations is automatically a sham.  By this logic, all litigation would be a sham. The standard for sham litigation is not whether one party will definitely win or lose on the claim, but rather whether the lawsuit is "objectively baseless," whether the baseless lawsuit "was the result of the litigant's subjective motivation to interfere directly with the business relationships

15

of a competitor through the use of the governmental process, as opposed to the outcome of that process." *Syncsort I*, 50 F. Supp. 2d at 334; *Organon, Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453, 460-61 (D.N.J. 2003). IRI has failed to allege facts supporting any of these elements; Syncsort's lawsuit, which is objectively sound, is an attempt to achieve the outcome of injunctive and monetary relief as pled in its Complaint.

### (3)   The Leveraging Allegations Are Deficient

IRI alleges that "Syncsort seeks to leverage its position as a virtual monopolist in the mainframe sort market to obtain a similar monopoly in the UNIX sort market." (Counterclaim ¶ 5(d).) This allegation suffers the same inadequacies of pleading regarding relevant market as IRI's primary section 2 claim. In addition, the Counterclaim fails to articulate any intelligible means of leveraging from one market to the other.

To state a claim of section 2 monopolization, a plaintiff must allege that the defendant possesses market or monopoly power. Market power has been defined as the power to control prices or exclude competition, and may be inferred from a predominant share of the market. *See, e.g., United States v. E.I. duPont De Nemours & Co.*, 351 U.S. 377 (1956); *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 200 (3d Cir. 1992).

Here, IRI pleads market power by reciting the legal conclusion that Syncsort occupies a "position as a virtual monopolist in the mainframe sort market," which market IRI does not further define. (Counterclaim ¶ 5(d)(i).) Curiously, IRI seems to lump all mainframe computers, irrespective of their various operating systems into the same "mainframe sort market", in contrast to its position that, for desktop computers of the type that run UNIX, each operating system reflects a different market. (*Id.*, ¶ 8(a).) IRI says nothing about Syncsort's market share or who the mainframe market competitors might be (aware no doubt that the two largest sorting software

16

vendors for mainframe computers are IBM and Computer Associates, each of which is a multi-billion dollar company many orders of magnitude larger than Syncsort). Similarly, there are no allegations demonstrating that Syncsort could have power in this market to control prices or exclude competition.

This Court was faced with similar conclusory allegations of monopoly power in *Syncsort I*, when Sequential alleged that Syncsort "controls the majority of the UNIX sorting market." 50 F. Supp. 2d at 330:

> Sequential recited in conclusory fashion that Syncsort 'controls the majority of the UNIX sorting market.' . . .This vague allegation of 'control' is the closest Sequential comes to alleging market share. In support of its single allegation, Sequential argued, '[c]ommanding a high price for an inferior product is inexplicable except for one's monopoly control over the market.' . . . This feeble explanation in the Opposition Brief does not render the conclusory recitation of market dominance in the Antitrust Counterclaim sufficient under Rule 12(c).

*Id.* IRI's conclusory allegations that Syncsort is a "virtual monopolist in the mainframe sort market" are no better than those dismissed in *Syncsort I*, and should be similarly dismissed here. Having failed to sufficiently allege Syncsort's monopoly control of the "mainframe sort market," IRI cannot state facts sufficient to show Syncsort's leveraging of the UNIX sort market. *Syncsort I*, 50 F. Supp. 2d at 339 (citations omitted).

Even if IRI could plead monopoly power in the primary mainframe market, its contention that a software vendor holding a monopoly position in that market could somehow leverage that position to force consumers of desktop computers to buy the same brand of software that big companies buy on mainframe computers defies common sense. Nowhere does the Counterclaim attempt to explain or support this counterintuitive proposition.

17

To plead a leveraging claim, IRI must demonstrate a "threatened or actual monopoly in the leveraged market." *Fineman*, 980 F.2d at 206. It is not sufficient to state that defendant enjoys in a competitive advantage in that market. *Id.* IRI's sole allegations in support of a section 2 leveraging claim are pled upon information and belief:

> On information and belief, Syncsort seeks to leverage its position as a virtual monopolist in the mainframe sort market to obtain a similar monopoly in the UNIX sort market.

> On information and belief, in at least two circumstances (and likely significantly more), Syncsort has leveraged its monopoly role with respect to mainframe sort software in an attempt to eliminate competition (including, but not limited to IRI) from the UNIX sort software market.

> On information and belief, Syncsort has done this by means of manipulating the prices it charges customers in the mainframe sort software market to force or entice those customers to then buy Syncsort's UNIX sort software (and be locked into Syncsort's multi-year license agreement).

(Counterclaim ¶ 5(d), (ii)-(iii).) These allegations are patently insufficient. IRI has failed to plead facts indicating that Syncsort's enticement of prospective customers reflects that it in any way has and has leveraged monopoly power. *See Fineman*, 980 F.2d at 206 (rejecting argument that plaintiff needed to prove "only a competitive advantage in the relevant [] market" in order to state a claim for leveraging; "a plaintiff must prove threatened or actual monopoly in the leveraged market.").

Courts presented with far more detailed leveraging allegations than those present here have dismissed attempted monopoly claims under the Rule 8(a) pleading requirements. *See Rolite Inc. v. Wheelabrator Envtl. Sys. Inc.*, 958 F. Supp. 992, 1003 (E.D. Pa. 1997) ("The only pleading Rolite makes with regard to a threatened or actual monopolization is that the defendants 'have been able to fix and maintain prices in each of the relevant markets,' and that 'defendant's

18

actions have suppressed or reduced competition and threaten to suppress or reduce competition in each of the relevant markets' . . . . These seem to me to be the type of conclusory allegations without any alleged facts to support them that are insufficient even at the pleading stage.") (citation omitted); *American Health Sys., Inc. v. Visiting Nurse Assoc.*, No. Civ. A. 93-542, 1994 WL 314313, at *13 (E.D. Pa. June 29, 1994) (dismissing allegation that "Defendant Hospitals used their market power in leveraging the home health care market in order to support their illegal exclusive dealings with VNA."). IRI's allegations that Syncsort has a "virtual monopoly" in the mainframe sort market, and that it "seeks to leverage its position . . . to obtain a similar monopoly in the UNIX sort market" (Counterclaim ¶ 5(d)), fall short of the applicable standard and are insufficient as a matter of law.

### C. IRI Fails to Plead Antitrust Injury

IRI also fails to plead antitrust injury. As the Supreme Court has made plain, a plaintiff claiming antitrust violations must plead and prove "more than injury casually linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Because the antitrust laws were enacted for the protection of competition, not competitors, an antitrust plaintiff must show an anticompetitive impact on the market, *id.* at 488, not just injury to itself. *See, e.g., Dial-a-Car, Inc. v. Trans., Inc.*, 884 F. Supp. 584 (D.D.C. 1995) (dismissing antitrust claim for failure to plead antitrust injury: "The facts alleged by Dial-a-Car do not meet the Brunswick test. They fail to show injury to competition, as opposed to injury to a single competitor.").

In an attempt to comply with this requirement, the Counterclaim states in conclusory and speculative terms that if Syncsort were to succeed in reducing competition in the market, "consumers would be deprived of any real choice among UNIX sort software products."

19

(Counterclaim ¶ 7(h).)  However, since there are no facts alleging that Syncsort actually has the ability to "lessen competition against its product in the relevant market," this assertion cannot be a basis for pleading antitrust injury.

At most, the only injury pled in the Counterclaim is injury to IRI.  *See* Counterclaim ¶¶ 7(g), 11.  This will not suffice to sustain an antitrust claim against Syncsort.

## II.   COUNTS IV AND V SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Counts IV and V purport to allege claims for tortious interference with prospective economic advantage and tortious interference with contract.  (Counterclaim ¶¶ 30-43.)  IRI fails, however, to plead facts sufficient to sustain either claim under Federal Rule of Civil Procedure 8(a), and accordingly they should be dismissed.

### A.   IRI Has Failed to Plead the Necessary Elements for Tortious Interference with Prospective Economic Advantage

To state a cause of action under New Jersey law for tortious interference with prospective economic advantage, a party must allege the following:

1.  A plaintiff's reasonable expectation of economic benefit or advantage;
2.  The defendant's knowledge of that expectancy;
3.  The defendant's wrongful, intentional interference with that expectancy,
4.  In the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit; and
5.  Damages resulting from the defendant's interference.

*Fineman*, 980 F.2d at 186 (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 37 (N.J. 1989)); *see also Automated Salvage Transport, Inc. v. NV Koninklijke KNP* BT, No. Civ. A. 96-369, 1997 WL 576402, at *19 (D.N.J. Sept. 12, 1997).

IRI alleges nothing *specific* that it contends constitutes tortious interference by Syncsort with IRI's prospective economic advantage.  Instead, IRI merely alleges that "[b]y engaging in the conduct described in this counterclaim, Syncsort intentionally interfered with the prospect of,

20

or reasonable expectation of, economic advantage to IRI arising from sales of IRI's product, CoSORT UNIX." (Counterclaim ¶ 31.)  The reader is left to wonder which conduct IRI may be referring to among the thirteen pages of Counterclaim allegations that might form the basis of this tortious interference claim.  Certainly, IRI does not explicitly allege any of the first three required elements of this claim.  For this reason alone, Count IV should be dismissed.  *See, e.g.*, *Fineman*, 908 F.2d at 186.

**(1)    The Alleged Conduct Constitutes Privileged
Competitive Activity**

To the extent that IRI's Counterclaim alleges anything that sounds like interference with an expectation of economic benefit or advantage, one could guess that IRI might be referring to its allegations of price competition between Syncsort and IRI contained in paragraphs 5(a)-(c), upon which IRI attempts to base its Section 2 claim.  As demonstrated above (*supra* at 3-20), IRI has not properly stated a Section 2 claim.  In like circumstances, the New Jersey Supreme Court has held that these types of allegations cannot support a tortious interference claim.  *E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*, 704 A.2d 1364, 1370 (N.J. 1996).

In *E Z Sockets*, plaintiff had alleged that defendant, a competitor of plaintiff, had induced a supplier to both companies to terminate its relationship with plaintiff and to deal only with defendant.  Plaintiff alleged that this conduct violated New Jersey's state antitrust statute and constituted tortious interference with economic advantage.  The New Jersey Supreme Court disagreed.  First, the Court held that the state antitrust statute was not violated.  In addressing the tortious interference count, the Court stated, "[w]hile a party does have a right to enjoy the fruits and advantages of its own labor without unjust interference, a party 'has no right to be protected against competition.'"  *E Z Sockets*, 704 A.2d at 1370 (*quoting Louis Kamm, Inc. v. Flink*, 113

21

N.J.L. 582, 587, 175 A. 62 (E. & A. 1934)).  Quoting the RESTATEMENT (SECOND) OF TORTS §

768 (1979), the Court set forth the parameters within which a competitor may lawfully compete:

> Competition as Proper or Improper Interference
>
> (1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
>
> (b) the actor does not employ wrongful means and
>
> (c) his action does not create or continue an unlawful restraint of trade and
>
> (d) his purpose is at least in part to advance his interest in competing with the other.

*E Z Sockets*, 704 A.2d at 1370.

The conduct alleged by IRI here falls squarely within the competition "privilege"

recognized by the New Jersey Supreme Court.  Syncsort and IRI are alleged to be competitors,

and the conduct is alleged to be for the purpose of advancing Syncsort's interest in competing

with IRI.  (Counterclaim ¶¶ 5(a)-(c), 7.)  As in *E Z Sockets,* "aside from an alleged antitrust

violation, [IRI] has proffered no evidence that suggests that [Syncsort] employed wrongful

means."  704 A.2d at 1370.  "[B]ecause [IRI] has not presented any evidence of wrongful means

other than that alleged in their antitrust claim," (*id.*), Count IV must be dismissed.

### (2)    IRI Fails to Specify Any Customers or Contracts Allegedly Subject to Interference

Even if the alleged conduct were not privileged competition, IRI's general and vague

allegations would not support a tortious interference with economic advantage claim, because

IRI "has failed to identify a single customer or a single contract that it was likely to consummate,

22

but failed to consummate, due to the actions taken by [Syncsort]." *Lucas v. Kendiesel, Inc.*, Civ.

A. No. 93-4480, 1995 WL 350050, at *9 (D.N.J. June 9, 1995); *accord Storis, Inc. v. GERS*

*Retail Sys., Inc.*, Civ. A. No. 94-4400, 1995 WL 337100, at *5 (D.N.J. May 31, 1995) (tortious

interference claim dismissed in dispute between competing software developers in which

defendant was alleged to have offered plaintiff's customers a free trade-in of plaintiff's software

for defendant's, as well as a special deal on optional modules, free electronic conversion, free

first year support service and free training, where plaintiff failed to identify any "specific

prospective contracts that were interfered with by [defendant]").

Where a claimant fails to identify any customers or contracts as the subject of

interference, its tortious interference count must be dismissed. *Lucas*, 1995 WL 350050, at *9;

*Storis*, 1995 WL 337100, at *5.

### B.   IRI Has Failed to Plead the Necessary Elements for Tortious Interference with Contract

The elements of tortious interference with contract are similar to those for prospective

economic advantage, the key difference being the requirement in the former of an existing

contract. *See Automated Salvage*, 1997 WL 576402, at *20; *Storis*, 1995 WL 337100, at *5.  As

with its interference with economic advantage count, IRI's interference with contract count fails

to identify any specific contract with which Syncsort allegedly interfered.  IRI's allegations

regarding the contracts allegedly subject to interference are as follows:

> 35.    During its negotiations with most prospective customers,
> IRI asks that prospective customer to sign a non-disclosure
> agreement that precludes the prospective customer from revealing
> certain information regarding the negotiations, including the price
> quotations IRI has made to that customer.
>
> 36.    On information and belief, on at least one occasion and
> likely more, Syncsort has induced prospective IRI customers to

> breach non-disclosure agreements those prospective customers
> entered into with IRI.
>
> 37.     On information and belief, Syncsort induced such breaches
> of IRI's non-disclosure agreement in order to learn what price
> quotation IRI had made to its prospective customer so that
> Syncsort could then undersell IRI.

(Counterclaim ¶¶ 35-37.)  This is nothing more than a general allegation that Syncsort

purportedly interfered with pricing non-disclosure agreements signed by "at least one"

unspecified IRI customer.  Under applicable law, this allegation cannot sustain a claim for

tortious interference.  *Automated Salvage*, 1997 WL 576402, at *20 (dismissing contractual

tortious interference count "because the plaintiffs have failed to allege the existence of any

contract that was the subject of intended interference."); *Storis*, 1995 WL 337100 at *5 ("Storis

has failed to allege the existence of a specific contract that was interfered with by GERS").

Equally fundamental, IRI fails to allege a coherent theory of damages that could flow

from interference with a pricing non-disclosure agreement.  IRI alleges that the consequence of a

breach of a pricing non-disclosure agreement is that Syncsort learns the price at which IRI

intends to sell, and with that knowledge Syncsort is able to engage in price competition and

"undersell IRI."  (Counterclaim ¶ 37.)  IRI further alleges, "As a result of Syncsort's wrongful

conduct [i.e., price competition], IRI has lost sales, good will, normal growth opportunities, and

suffered pecuniary injury."  (Counterclaim ¶ 43.)  IRI has no protectable interest in avoiding

price competition, however.  *Cf. E Z Sockets*, 704 A.2d at 1370 ("a party 'has no right to be

protected against competition'"); *Brunswick Corp.*, 429 U.S. at 489 ("antitrust laws . . . were

enacted for 'the protection of competition not competitors'").  Indeed, were the Court to credit

IRI's allegations that the only two meaningful participants in the market are IRI and Syncsort

(Counterclaim ¶ 7(b)-(d)), IRI's agreements with prospective customers to block price

competition would appear to violate both Section 1 of the Sherman Act and Section 56:9-3 of the New Jersey Antitrust Act. *See E Z Sockets*, 704 A.2d at 1366-68.

Counterclaim Count V should therefore be dismissed.

### III.   IRI'S COUNT VI ALLEGING UNFAIR COMPETITION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

IRI makes a generalized allegation that "some or all" of the conduct alleged throughout its Counterclaim "constitute [sic] common-law unfair competition," and further that it has "lost sales, good will, normal growth opportunities, and suffered pecuniary injury" as a result of same. (Counterclaim ¶¶ 45-46.)

Under New Jersey law, "there are two relevant torts of unfair competition, passing off one's goods or services as those of another, and unprivileged imitation." *SK&F, Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1062 (3d Cir. 1980); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 494 (D.N.J. 1998); *Wilson v. Mr. Tee's*, 855 F. Supp. 679, 684 (D.N.J. 1994). IRI has made no allegations nor stated any facts that constitute either basis for an unfair competition claim.

Moreover, this Court has held that in instances where, as here, "plaintiff predicates its unfair competition claims on the same factual allegations forming the gravamen of its tortious interference . . . claims," the former cannot be sustained if the latter are dismissed. *Coast Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co.*, 912 F. Supp. 747, 786 (D.N.J. 1995). As demonstrated *supra*, neither IRI's tortious interference claims nor its Section 2 claim can be sustained.

Accordingly, Counterclaim Count VI should be dismissed.

## CONCLUSION

For the foregoing reasons, Syncsort's Motion to Dismiss Counts I, IV, V and VI of the

Counterclaim should be granted in all respects.

Respectfully submitted,

Dated: September 20, 2004                    HUGHES HUBBARD & REED LLP


By:  /s/ Ronald Abramson
      Ronald Abramson (RA 0979)

      101 Hudson Street, Suite 3601
      Jersey City, NJ  07302-3908
      (201) 536-0799

      *Attorneys for Plaintiff and Counterclaim
      Defendant*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused copies of the attached Plaintiff's

Memorandum of Law in Support of Its Motion to Dismiss Defendant's Counterclaim to be filed

electronically with the Court and served via electronic mail on:

> Sherry D. Williams, Esq.
> Kirkpatrick & Lockhart LLP
> One Newark Center, 10th Floor
> Newark, New Jersey  07102
>
> David R. Fine, Esq.
> Kirkpatrick & Lockhart LLP
> Payne Shoemaker Building
> 240 North Third Street
> Harrisburg, PA 17101-1507
>
> Attorneys for Defendant Innovative Routines International, Inc.

Dated:  September 20, 2004

>     /s/ Ronald Abramson
> Ronald Abramson (RA 0979)

NY 883865_1.DOC